UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| In Re: | Chapter 11 |
| FAIR HAVEN CLAM & LOBSTER CO., LLC, et al. | Case No.  16- 30623 AMN |
| Debtors | Jointly Administered |
| FAIR HAVEN CLAIM & LOBSTER CO., LLC<br>CAAMM PROPERTIES, LLC | |
| Movants | |
| VS. | |
| CITY OF NEW HAVEN<br>GNHWPCA<br>REGIONAL WATER AUTHORITY<br>KEY BANK, N.A.<br>  f/n/a FIRST NIAGARA BANK, N.A.<br>RICHARD IANNUCCI<br>LENORE MARTORELLI<br>STATE OF CONNECTICUT DEPARTMENT OF LABOR | December 23, 2016 |
| Respondents | |

**MOTION TO SELL REAL PROPERTY AND PERSONAL PROPERTY FREE AND CLEAR OF THE INTERESTS, CLAIMS AND LIENS OF THE RESPONDENTS**

Fair Haven Clam & Lobster Co., LLC ("FHC&L"), and CAAMM Properties LLC ("CAAMM"), Debtors in Possession, by and through their respective counsel Coan, Lewendon, Gulliver & Miltenberger, LLC, and the Dean W. Baker, Esq., file this joint motion pursuant to 11 U.S.C. 363(b) and (f), and Rule 9014, Federal Rules of Bankruptcy Procedure ("F.R.B.P.") and other relevant provisions of the Bankruptcy Code and Rules, and state in support as follows:

1. The FHC&L case was commenced by the filing of a voluntary petition under

chapter 12 on the 22nd day of April 2016 ("Petition Date"). CAAMM filed its voluntary petition under chapter 11 on the same date and said cases are now jointly administered. The FHC&L proceeding was converted to a chapter 11 proceeding on September 22, 2016. CAAMM and FHC&L are necessarily intertwined with CAAMM serving as the real estate holding company for the operating entity, FHC&L. More specifically, FHC&L is in the business of shellfishing and cultivating and harvesting shellfish. FHC&L owns boats and equipment utilized in its business and CAAMM owns real estate where offices, tanks, sorters and refrigeration equipment are housed and docks affixed to the real estate provide moorage for the fishing vessels. CAAMM and FHC&L are Connecticut limited liability companies and each company is owned 100% by the same sole member, Michael Fraenza. Both Debtors have continued in possession of their property and management of their business affairs as Debtors in Possession throughout these proceedings.

  2. Assets of the bankruptcy estate include five parcels of real property, three fishing vessels, and personal property relating to the shellfishing business. By this motion, Debtors seek authority to sell said assets, comprising all tangible assets of the estate, free and clear of liens, pursuant to an offer that has been received from and negotiated with Norm Bloom & Son, LLC. Simultaneously herewith, Debtors have filed a motion (the "Sales Procedures Motion") seeking approval of a "stalking horse" agreement contained within the purchase and sale documents, bidding procedures for any higher and better bids, and other relief as detailed therein.

  3. This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. Section 157(b)(2)(A), (B), (K) and (O). The statutory predicate for relief sought herein is

Case 16-30623    Doc 131    Filed 12/23/16    Entered 12/23/16 11:43:18    Desc Main
            Document      Page 3 of 11

Section 363(b) and (f) of the Bankruptcy Code. Applicable rules include Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure ("FRBP").

4. Bankruptcy Code Section 363(b) provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…" A court may authorize the sale of all or a substantial portion of a chapter 11 debtor's assets pursuant to Bankruptcy Code Section 363 prior to approval of a plan where the debtor provides an articulated business justification for such a sale. Committee of Equity Security Holders v. The Lionel Corporation (In re The Lionel Corporation), 722 F.2d 1063, 1070 (2nd Cir. 1983). In determining whether there is such an articulated business justification, a court may consider all salient factors pertaining to the proposed sale, including the proportionate value of the asset to the estate as a whole, the likelihood that a plan will be proposed and confirmed, the effect of the proposed sale on the debtor's ability to file a plan, the proceeds to be obtained from the disposition relative to the value of the property, and whether the assets are increasing or decreasing in value. Id. at 1071. A "good business reason" on which courts have found justification for the sale of a debtor's property prior to a plan is that delay will result in deterioration of value and "a good business opportunity was presently available, so long as the parties could act quickly. In such cases…the bankruptcy machinery should not straightjacket the bankruptcy judge so as to prevent him from doing what is best for the estate." Id. at 1069.

5. Debtors seek authority to sell all the personal and real property of these estates for a total price of $1,220,000 to Norm Bloom & Son, LLC, a Connecticut limited liability company, pursuant to terms and conditions as set forth in the Sales Procedures Motion and the Asset Purchase Agreement and Contract of Sale appended thereto (the "Contracts"). Among those

terms is the Proposed Buyer's commitment to lease back to Debtor one vessel through March 1, 2017, for the sum of $10, to allow Debtors to implement its agreement with State of Connecticut to continue harvesting shellfish on its former leased grounds per the compromise previously approved the court at ECF No. 126. Debtors believe the offer presents a good opportunity to maximize value to creditors. Moreover, the shellfishing business has struggled with lengthy weather and equipment problems resulting in significant periods without income. Due to depressed income and other reasons FHC&L has been unable to preserve its last remaining shellfishing seabed lease with the State of Connecticut. Consequently, a liquidation plan is a prudent strategy in Debtors' best business judgment and the proposed sale is therefore appropriate to facilitate a prompt resolution of the estates. Any period of inactivity of FHC&L's equipment risks deterioration and expensive repairs. Debtors' physical plant includes high daily electrical costs to circulate thousands of gallons of water, to heat water in lines to maintain circulation and avoid freezing and broken pipes, and to protect the vital and expensive main engines and pump engines on the vessels, among other things. Even careful shutdown and winterization of the facilities is estimated to cost $25,000 and to depress sale values due to the extra costs associated with renewal of operations. These facts support a valid business justification for a prompt sale under Section 363 of the Bankruptcy Code. Moreover, the specifics of the proposed sale provides for use of one-half of the deposit by the Debtors as a loan for immediate use by Debtors, including the maintenance of the facility and assets, pending closing.

  6. Real property to be sold (the "Real Property") is titled in the name of CAAMM and is described generally as follows:

263 Front Street, New Haven, CT,

265 Front Street, New Haven, CT,

269 Front Street, New Haven, CT,

520 Quinnipiac Avenue, New Haven, CT, and

524 Quinnipiac Avenue, New Haven, CT.

7. Personal property to be sold (the "Personal Property") belongs to FHC&L and is described generally as follows:

(a) Commercial fishing vessels, specifically:

　　i. 45' clam and lobster boat, named the "Rock and Roll," with 490 HP diesel Engine;

　　ii. 42' clam and lobster boat, named the "Michael & Christopher," with 580 HP diesel engine;

　　iii. 42' clam and lobster boat, named the "Angela Marie," with 600 HP Detroit diesel engine;

(b) Fishing equipment, including: Spear pump, 2 spear winches, dredges, cable and blocks, gas heaters for boats, hardware, shovels, rakes, and brooms;

(c) Two clam sorting machines;

(d) Walk-in cooler;

(e) 10,000 gallon lobster tank system with full refrigeration and pump system;

(f) Rope, rubber bands, lobster pot rope, filters, oil, hydraulic fluid, hoses, nuts and bolts;

(g) Office furniture and equipment, such as desks, chairs, file cabinets, credenza, computers, printer and fax machine;

(h) All of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets;

(i) All insurance benefits, including rights and proceeds, arising from or relating to the Purchased Assets;

    (j)    Originals, or where not available, copies, of all books and records, including, but not limited to, machinery and equipment maintenance files, operating manuals.

8. Debtors submit that the proposed sale provides significant benefit to the estates. The proposed sale provides fair recovery for creditors holding secured clams. Unsecured claimants of each estate also stand to benefit from the transaction in conjunction with an agreement reached with Debtors' primary secured creditor, KeyBank, N.A. ("KeyBank"), as successor to the interests herein of First Niagara Bank, N.A. KeyBank is the first mortgage holder on four of the five CAAMM properties, and its interest in those properties, after payment of senior real property tax and water and sewer charges, consumes the entire value of those properties. Accordingly, Debtors requested and believe they have obtained agreement with KeyBank for a ten per cent (10%) carve out from the CAAMM properties in which KeyBank has an interest.  In addition, Debtors believe they have reached an agreement with KeyBank regarding valuation allotments on its first priority secured interest in the personal property assets of FHC&L.  The agreed valuation of the bank's collateral in FHC&L assures significant value for administrative expense and unsecured claims in that estate. The value for unsecured claims in FHC&L also benefits the CAAMM estate because it holds a claim against FHC&L constituting about 25% of the total allowed claims against FHC&L. (CAAMM's percentage of the FHC&L unsecured creditor class is subject to change upon resolution of other possible issues including objections that may be filed against certain other claims in FHC&L which could potentially increase CAAMM's percentage.)  Thus Debtors believe the proposed sale significantly benefits creditors of both estates.

9. The Debtors believe the following claims, liens, or encumbrances may affect the estates' interest in the Real Property:

a. As to 263 Front Street,

   i. Statutory lien for real property tax, City of New Haven, in the approximate sum of $18,639

   ii. Statutory lien for Regional Water Authority ("RWA") water charge in the approximate sum of $502

   iii. Statutory lien for Greater New Haven Water Pollution Control Authority ("GNHWPCA") in the approximate sum of $234

   iv. Mortgage to KeyBank NA fka First Niagara Bank NA ("KeyBank") with balance per proof of claim at Petition Date of $496,626 as described in Exhibit 1-A hereto

   v. Mortgage to Richard Iannucci ("Iannucci") in the original sum of $70,000 and thereafter modified, all as described in Exhibit 1-B hereto

   vi. Mortgage to Lenore Martorelli ("Martorelli") with balance per proof of claim at Petition Date of $113,391 as described in Exhibit 1-C hereto

   vii. Mortgage to Martorelli with balance per proof of claim at Petition Date of $113,693 as described in Exhibit 1-D hereto

   viii. Mortgage to Iannucci in the original sum of $100,000 as described in Exhibit 1-E hereto

   ix. Mortgage to Iannucci in the original sum of $75,000 as described in Exhibit 1-F hereto

b. As to 265 Front Street,

   i. Statutory lien for real property tax, City of New Haven, in the approximate sum of $26,675

   ii. Statutory lien for RWA water charge in the approximate sum of $157

   iii. Statutory lien for GNHWPCA in the approximate sum of $234

   iv. Mortgage to KeyBank with balance per proof of claim at Petition Date of $496,626 as described in Exhibit 1-A hereto

   v. Mortgage to Iannucci in the original sum of $70,000 and thereafter modified, all as described in Exhibit 1-B hereto

    vi. Mortgage to Martorelli with balance per proof of claim at Petition Date of $113,391 as described in Exhibit 1-C hereto

    vii. Mortgage to Martorelli with balance per proof of claim at Petition Date of $113,693 as described in Exhibit 1-D hereto

    viii. Mortgage to Iannucci in the original sum of $100,000 as described in Exhibit 1-E hereto

    ix. Mortgage to Iannucci in the original sum of $75,000 as described in Exhibit 1-F hereto

c. As to 269 Front Street,

    i. Statutory lien for real property tax, City of New Haven, in the approximate sum of $18,002

    ii. Mortgage to Iannucci with balance as of 12/31/2016 of $81,300 plus per diem of $16.52 as described in Exhibit 1-G hereto

    iii. Mortgage to Martorelli with balance per proof of claim at Petition Date of $113,391 as described in Exhibit 1-C hereto

    iv. Mortgage to Martorelli with balance per proof of claim at Petition Date of $113,693 as described in Exhibit 1-D hereto

d. As to 520 Quinnipiac Avenue,

    i. Statutory lien for real property tax, City of New Haven, in the approximate sum of $10,826

    ii. Mortgage to KeyBank with balance per proof of claim at Petition Date of $189,608 as described in Exhibit 1-H hereto

    iii. Mortgage to Iannucci in the original amount of $269,597.99, securing pre-existing debt, as described in Exhibit 1-I hereto

    iv. Mortgage to Iannucci in the original sum of $75,000 as described in Exhibit 1-F hereto

e. As to 524 Quinnipiac Avenue,

    i. Statutory lien for real property tax, City of New Haven, in the approximate sum of $17,424

   ii. Mortgage to KeyBank with balance per proof of claim at Petition Date of $189,608 as described in Exhibit 1-H hereto

   iii. Mortgage to Iannucci in the original amount of $269,597.99, securing pre-existing debt, as described in Exhibit 1-I hereto

   iv. Mortgage to Iannucci in the original sum of $75,000 as described in Exhibit 1-F hereto

10. The Debtors believe the following claims, liens, or encumbrances may affect the estates' interest in the Personal Property:

 a. As to two vessels, Angela Marie and Michael & Christopher,

   i. Preferred Ship Mortgage to KeyBank with balance per proof of claim at Petition Date of $496,626 as described in Exhibit 1-A hereto

 b. As to all Personal Property other than vessels,

   i. Security Agreement to KeyBank with balance per proof of claim at Petition Date of $189,608 as described in Exhibit 1-H hereto

   ii. Connecticut Department of Labor Lien with balance per proof of claim at Petition Date of $10,994 as described in Exhibit 1-J hereto

11. The Debtors seek authorization to sell the Real Property and the Personal Property free and clear of the interests, claims and liens in same of the Respondents. The Debtors assert that each Respondent either consents to the sale or is an entity that could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. *See,* 11 U.S. C. §363(f)(5).

12. Moreover, the Contracts require that the Purchased Assets shall be transferred to Purchaser free and clear of all Liens and all Liabilities, causes of action, demands, guaranties, rights, restrictions, remedies, and matters of any kind or nature whatsoever, whether at law or in equity, including, without limitation, free and clear of any rights or claims based on theories of

transferee or successor liability under any applicable law, statute, rule, regulation, common law or equitable principle, including without limitation, any Environmental Laws, labor or employment laws (such as unemployment compensation), ERISA, the Code, and COBRA, of any Governmental Entity, including, without limitation, the Pension Benefit Guaranty Corporation, the IRS, state and local taxing authorities and any Governmental Entity, whether arising before or after the commencement of the Bankruptcy Case and whether imposed by agreement, understanding, law, equity, regulation, custom or otherwise, including, without limitation, the Benefit Plans.

13.    The Debtors have filed the Sales Procedures Motion simultaneously herewith which provides for a fair and public auction process should any third party offer a higher and better bid for the Personal Property and the Real Property. Thus, the Debtors seek to sell same to the proposed buyer Norm Bloom & Son, LLC, or the highest bidder as may be approved by the court (the "Purchaser"), for the sum of $1,220,000 or such other higher bid that may be approved. Debtors also seek an order of the court transferring the Personal Property and Real Property to the Purchaser free and clear of the interests, claims and liens of the Respondents referred to above, and to have said interests, claims, and liens transferred to and attached to the proceeds of sale with the same validity and to the same extent and order of priority that said interests, claims and liens may have had on the estates' interests in the Personal Property and the Real Property immediately preceding the Petition Date.

THEREFORE, Fair Haven Clam & Lobster Co., LLC, and CAAMM Properties LLC, Debtors in Possession, pray for an order permitting them to sell the estates' interest in the Personal Property and the Real Property to Norm Bloom & Son, LLC, or such other bidder as the

court may authorize, free and clear of the interests, claims and liens of the Respondents referred to above and all parties, and to have said interests, claims, and liens transferred to and attached to the proceeds of sale with the same validity and to the same extent and order of priority that said interests, claims and liens may have had on the estates' interests in the Personal Property and the Real Property immediately preceding the Petition Date, finding said Norm Bloom & Son, LLC is a good faith purchaser, and for such other and further relief as is just and appropriate.

| CAAMM PROPERTIES, LLC | FAIR HAVEN CLAM & LOBSTER CO., LLC |
|---|---|
| By: /s/ Dean W. Baker | By: /s/ Carl T. Gulliver |
| Dean W. Baker (ct05985) | Carl T. Gulliver (ct00944) |
| Its Counsel | Its Counsel |
| Law Office of Dean W. Baker | Coan, Lewendon, Gulliver & Miltenberger, LLC |
| 195 Church Street | 495 Orange Street |
| New Haven, CT  06510 | New Haven, CT 06511 |
| Telephone:  (203) 777-5666 | Telephone:  (203) 624-4756 |
| Facsimile:  (203) 773-1427 | Facsimile:  (203) 865-3673 |
| Dean@bohonnon.com | cgulliver@coanlewendon.com |